and Minor. Counsel, whenever you're ready, you may proceed. Your Honors, my name is Tim Hutzka. I'm the attorney for the Respondent Appellant in this matter, D.M.B. May it please the Court and Counsel. The single issue in this case is a relatively straightforward one, Your Honors, and that's how quickly, how fast my client's car was traveling. He was charged and found guilty after a gun trial of aggravated fleeing or attempting to elude a peace officer who was giving a visible or audible signal to him. There were two police officers that testified. The one that I'm going to be focusing on was the testimony of Deputy Craig Vieira with the Marion County Sheriff's Department. The Petition for Adjudication of Burnship specifies that my client was fleeing from Officer Vieira. So you're kind of using the white bronco defense. I hadn't thought about that way, but possibly that could be one way to look at it, yes. And the question is not was my client speeding. The precise question that must be answered is was my client traveling at least 21 miles per hour over the speed limit. Any other issues about whether there were multiple officers, whether there were stop signs that were being run, my client's mental condition are simply not relevant. The focus of this appeal is whether or not he was 21 miles an hour or more over the speed limit. To that issue, Deputy Vieira testified that he began pursuing my client on what was referred to as East Main Street or Highway 50. That's the same road in Marion County. My client and then Deputy Vieira turned off Highway 50 onto some of the back roads east of Salem. Metcalf Road, Apple Ridge Road, Briarcroft Road. Deputy Vieira testified that at one point, and this is on page 58, sorry, 57 of the transcript of the reported proceedings, that as he was traveling down Metcalf Road, he paced the vehicle. Now pacing seems to be a simple term, but I submit that there's more to pacing than simply following someone. Deputy Vieira's testimony, the question was so, as you were traveling down Metcalf Road, can you tell us whether or not you were at any time able to pace the vehicle? The answer was yes. The question was then when would you pace the vehicle? Deputy Vieira gave us a location, then said when we reached speeds of about 73 miles an hour is when I first activated the lights, which is a 55 mile an hour zone. At that point, Deputy Vieira placed my client only 18 miles an hour over the speed limit. He goes on to say, and then once again I believe it was noted throughout as I was keeping dispatch informed of where we were at and the speeds we were traveling, somewhere around Apple Ridge Road is when he reached 80 miles an hour. So at this point, Deputy Vieira has placed my client in excess of 21 miles per hour over the speed limit. A later question, speeds were reached at approximately 80 miles per hour. Deputy Vieira's answer, that's correct. At this point, he's gone from 80 miles an hour to approximately 80 miles per hour. Again, the question is not was my client speeding? We're not talking as he's doing 56 miles an hour. In a 55 mile per hour zone, he's got to be doing at least 76 miles per hour in order to be convicted under the statute. Later question, so after speeds were reached, there was at the intersection of Apple Ridge, Apple Road near 80. Did you continue with your emergency lights illuminated? Answer, yes. So again, the state's question was near 80 miles per hour. Deputy Vieira answered and Sire was wrong, yes. Near 80 miles per hour implies that it's not necessarily exactly 80 miles per hour. If someone says approximately or says near, that implies there's a range. Could be slightly more, could be for conviction up to 80, that is the estimated speed. That range could put the speed below 76 miles per hour, which would mean that my client would not be convicted of aggravated fleeing as he was charged. In Deputy Vieira's testimony, getting back to the pacing issue, he doesn't give any indication of distance from, between what you're doing, between his squad car and my client's car. Doesn't indicate whether he was traveling 80 miles per hour or whether he was at a previous time traveling 73 miles per hour. Doesn't indicate whether he's gaining on my defendant's car, whether the defendant's car is pulling away from him. He does note that at one point after he activated his lights, my client accelerated, seemed to accelerate and pull away. But when he's discussing the pacing, there's no indication of how fast does your speedometer say you're going, are you catching up to him, how long were you traveling at these speeds to indicate that the speed was high enough on a short enough length of road to actually pull away. There's a case that I cite in my brief, and that is Peeble v. Lipscomb. And that case, the citation for that is 2013 ILL Act 1st 120530. That case involved a defendant that was convicted for aggravated speeding, fleeing and attempting to flee. And on appeal, the appellate court discussed whether or not details such as was the officer catching the defendant, was there a constant distance between them, how long were they traveling at these speeds. The appellate court found because those details were lacking, the officer's testimony alone was insufficient to support the conviction. The officer was the only witness in that case. In this case we had two witnesses, but only one, Deputy Vieira, is relevant to the actual charge in the petition. I submit this case is similar to a Lipscomb case. We had an officer that sang, I was following him, I paced him without providing more details, without providing more facts that can support his allegation of, or his belief that my client was traveling at least 21 miles per hour over the posted speed limit. There's another case, I believe it's Peeble v. Brown, that states, that citation is 362 Illap 3rd 374 out of the 1st District in 2005. Is that a case you cited in your brief? I believe it was cited in my brief also, Judge, yes. In that case, the court specifically found that the officer's testimony about speeding wouldn't be sufficient to support a conviction that involved a determination of how fast was the defendant's car traveling. But the difference between the Brown case and the Lipscomb case is that in the Brown case there were slightly more details. I also believe in the Brown case the officer testified that the defendant was roughly double the speed limit. The speed limit was 35 and I think the speeds were estimated at 70 to 80 miles per hour. That leaves a much larger range, room for approximation, room for error, on the officer's estimation of the speed. If the defendant's traveling 35 miles per hour over the speed limit and the officer guesses off by 10 miles per hour, the defendant still would be 25 miles per hour over the limit and would still be subject to conviction. In this case, again, if the officer's, if the defendant's traveling 35 miles per hour over the speed limit and the officer guesses as compared to the actual speed, now we don't have a conviction. We're not calling into doubt Officer Vieira's credibility. We're not saying that anything else he testified about was wrong. The judge said there's no inherent order in the record that Officer Vieira was able to testify clearly without the benefit of the report, without refreshing his recollection. I have no doubt that he was. We're simply saying that there's too narrow of a range and too few specific facts in his testimony to prove beyond a reasonable doubt that my client was traveling 76 miles per hour or more. That's the issue that I 've asked that the trial court's order that found my defendant guilty be reversed. If there's no further questions, that's all I've got. I don't believe so, Your Honor. Thank you, Counsel. Counsel? May it please the Court, Counsel, Chelsea Casten on behalf of the State. Your Honors, it was for the trier of fact, in this case the trial court, to determine the weight to be given to the witness's testimony, the witness's credibility, and the reasonable inferences drawn from the evidence. In this particular case, the trial court went into pretty good detail in reaching its decision that the juvenile in this case was, in fact, guilty of trying to elude a police officer and traveling in excess of 21 miles per hour over the posted speed limit. The trial court noted for the record that Officer Viera was able to testify without having to refresh his recollection. He could even tell what turns were taken and what traffic violations were committed over the course of the high-speed chase, which in fact, it was a high-speed chase. In addition, Your Honors, as my opposing counsel already pointed out, the officer testified, I believe it was noted throughout as I was keeping dispatch informed of where we were at and the speeds we were traveling, somewhere around Apple Ridge is when he reached 80 miles an hour. It was after that that he again referenced the juvenile traveling at around 80 miles per hour. So there was, I mentioned, two separate times of him traveling at a speed of 80 miles per hour. There isn't a requirement in the statute that the individual has to travel for a certain length of time in excess of 21 miles per hour over the posted speed limit. That wouldn't make any sense for the statute, Your Honors. In this case, the juvenile was first chased by Officer Viera going 73 miles an hour and then going up to 80 in a posted speed zone of 55 miles per hour. The defendant concedes in his brief on page 7 that a defendant's speed may be proven by a radar gun, a stopwatch, hazing a defendant's vehicle, or by direct testimony of an officer. Looking at the requirements of the statute, it's clear that the state met its burden of proof through witness testimony using both Officers Mader and Viera. I might say their names wrong. The relevant question comes down to the direct testimony presented by the pursuing officers and what the trial court found was sufficient evidence, not how much over 21 miles an hour the defendant was traveling. It takes a great deal of speculation in this case particularly to determine, eh, I don't think he really was going over 21 miles an hour, particularly when we have two officers who testify to his rate of speed, both whom paced the vehicle. There's no case that can be cited to stating that pacing a vehicle is an insufficient method by a police officer to determine the rate of speed which an individual is traveling that they're pursuing. They're professionals. They know how to do their jobs. Particularly in this case, both Officer Mader said that the juvenile was traveling at 78 miles an hour before he had to discontinue his pursuit because of jurisdictional issues and then Officer Viera took over the pursuit and began pacing the individual or signaling to him to pull off when he started traveling at 73 and then got all the way up to 80. In other words, I think that the record is very clear in this case and there is sufficient evidence to determine that the trial court did properly determine that the juvenile was speeding in excess of 21 miles an hour over the speed limit. The officer was able to follow the entire course of the chase, ending at the juvenile's driveway where he wouldn't get out of the vehicle and then the officers had to arrest him when he wouldn't comply with their request that he leave the vehicle and hold his hands up. Based on that, Your Honors, the court can see in Appendix A of all as Appendix B where we provided the trial court's ultimate opinion and decision in reaching a guilty verdict. There is no lack of credibility or a reasonable inference that can be drawn from the testimony showing that the individual was in fact traveling in excess of 21 miles per hour. Unless the court has any questions for me, we would ask that you affirm the ruling of the lower court. Thank you. Thank you, Counsel. Counsel? Thank you, Your Honors. And just briefly, again, the fact that Deputy Vieira didn't have to refresh his recollection from a report is not relevant to the issue of him estimating how fast my client was traveling. It does not bear on that issue. If we were deciding what roads they were traveling on, then maybe it would be impressive, commendable, what have you, but he was able to remember those details. But that detail about an estimated speed is not something that we would expect that he would need to refresh his memory on. The testimony about Deputy Vieira saying he was traveling 80 miles per hour, then the question was, was he around 80 miles per hour? Another question was near 80 miles per hour. 80 miles per hour is an exact number. Around and near 80 miles per hour is not an exact number. There is going to be some range, higher or lower. Was there not some, I might be confused, was there not some evidence about running stop signs on turns? Yeah, there was testimony about running stop signs and things like that. If it was a nighttime thing and someone extinguished their lights, would that be sufficient? Somebody extinguished their lights? The defendant or the officer? No, the defendant. If the defendant turned and couldn't see the car? I think that would be relevant, yeah, because then it's going to make it harder to see the vehicle. It's going to make it more difficult to say exactly where that car is. Am I catching it? Is he pulling away from me? Or is he trying to get away from you? I'm sorry? Or is the vehicle trying to get away from you? It could raise any number of questions, but on the specific issue of speed, again, 21 over, if it's difficult to see the car, yeah, I think that would be another relevant consideration. Well, that's what I was wondering, if bypassing a stop sign is trying to get away or something. But that's not what was charged in the petition, and I think Westchester actually does provide for that, but that's not the basis for his charge. And I say certainly. I would suspect that if he's going around a stop sign making a turn, he's probably not going 76 miles per hour, which would not support the charge. The distance between the two vehicles or how far they go at a certain time, that's relevant to the issue of pacing. That's relevant, again, to is the officer catching the defendant? Is the defendant pulling away from him? So it's not about, well, how far do they go over a 30-second time period? It's what's the relation between those two vehicles over that 30-second time period or over that one-mile stretch of roadway? The testimony from Officer Meadow that said he paced my client 78 miles per hour, again, the charge on page 8 of the record says Deputy Vieira and give specific roads. Again, finally, Your Honor, this is not about the officer's credibility. This is simply about was my client going in excess of 21 miles per hour over the speed limit, and is Officer Vieira's testimony sufficient to prove that? We would submit that it's not. Thank you, Your Honor. Thank you, Counsel. Excuse me. We appreciate the briefs and arguments of counsel. We'll take the case under advisement, issue a ruling, and due course.